UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DANIEL V. REYES,

      Plaintiff,

          v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

CAUSE NO. 2:24-cv-425

## OPINION AND ORDER

Plaintiff Daniel V. Reyes appeals the Social Security Administration's decision to deny his application for disability benefits. An administrative law judge found that Reyes was not disabled within the meaning of the Social Security Act. Reyes raises various challenges to the ALJ's determination, but I conclude that the ALJ built an accurate and logical bridge from the evidence to her conclusions and that her analysis regarding Reyes' subjective statements was not patently wrong. The decision of the ALJ is affirmed.

## Background

A detailed summary of the medical records in this case can be found in the ALJ's decision [DE 8, 11-22] and in Reyes' opening brief. [DE 14.] Instead of restating a summary of those expansive medical records here, I will give a brief overview of the case.

1

Reyes applied for disability benefits on April 20, 2022, alleging that his disability began August 30, 2021. At the hearing before the ALJ, this was amended to December 20, 2021. The ALJ considered an abundant record, including medical reports and examinations; additionally, she held a hearing where Reyes and an impartial vocational expert appeared and testified.

The ALJ employed the five-step process to determine whether Reyes was disabled for purposes of the statute. [DE 8, 11-22.] Step 1 involved determining whether Reyes was involved in substantial gainful activity. The ALJ found that Reyes was not involved in substantial gainful activity, and thus that he had satisfied Step 1. *Id.* at 13.

At Step 2, the ALJ determines whether the individual's impairments are "severe," either independently or in combination with each other. The ALJ explained that a medical impairment is severe if it significantly limits an individual's ability to perform basic work activities.  *Id.* at 12. The defendant has a long list of injuries, conditions, and medical treatments that the ALJ categorized as severe or non-severe. The ALJ determined that his bilateral torn rotator cuffs that have been operated on multiple times constituted a severe impairment, as well as the mild degenerative changes to his right hip, sleep apnea, obesity, history of coronary artery disease, and ischemia on the brain. *Id.* at 13.

The ALJ also determined that many of Reyes' impairments were not severe, including his hyperlipidemia, mild vitreous degeneration and cataracts of the right eye, fatty liver, colitis, depression, and intermittent headaches. *Id.* at 14. The ALJ described why she found these conditions to not be severe. *Id.* For example, she explained how

there was no indication that Reyes' vitreous degeneration of the right eye significantly affected his vision during the relevant period. *Id.* She explained how there was no specialized treatment for his colitis and stated that it was not a recurring issue. *Id.* She explained that many of the conditions were well controlled with medications or treatment, such as how his intermittent headaches were largely controlled with Tylenol. *Id.* She described the results of his mental status examination as well, which were generally normal, with some mild limitations relating mostly to memory, and no evidence of a stroke. *Id.* at 14-15.

In Step 3 of the analysis, the ALJ must determine whether Reyes' impairments or combination of impairments are severe enough to satisfy the standard for disability. If the ALJ does not find them severe enough to be a disability under the standard, she must then determine his residual functional capacity ("RFC") to perform his past relevant work in Step 4. If he can still perform his past work, he is not disabled. If he does not have the RFC to perform his past work, the ALJ must determine in Step 5 whether he can perform any other work available in the national economy given his education, age, functional capacity, and work experience. If he can, he is not disabled. If he cannot, he is disabled.

The ALJ determined that Reyes' impairments were not severe enough to render him disabled. She determined that, with his RFC, he was capable of performing light work so long as it did not involve certain movements such as climbing ladders and crouching and only involved remembering and carrying out simple instructions. *Id.* at 16. The ALJ noted that Reyes' subjective statements about the intensity, persistence, and

limiting effects of his symptoms were not consistent with the medical evidence. She explained, amongst other things, that Reyes had some limited mobility in his shoulders, was found to have a normal gait and no problem getting onto the examination table during a medical evaluation, could walk and stand for short periods, tested negative for neuropathy, had normal motor control over his hands, normal strength, and that his orthopedic doctor noted that he was at full weight bearing status. *Id.* at 16-20.

Reyes had previously worked as a crane operator, food delivery driver, and Lyft taxi driver. *Id.* at 20. The ALJ found that Reyes was not capable of performing any of this past work. *Id.* However, the ALJ found that there were many jobs he could perform given his RFC, high school education, work experience, and age (49 at the disability onset date). The ALJ pointed out that the vocational expert testified that Reyes was still eligible for light unskilled work, including as an office helper, mail clerk, and routing clerk. *Id.* at 21. Based on this, the ALJ found that Reyes could still find employment, and was not disabled under section 216(i) or 223(d) of the Social Security Act. *Id.* at 21-22.

## Discussion

When deciding a social security appeal, I am not supposed to determine from scratch whether the claimant is disabled. Rather, my review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). This review of the ALJ's decision is deferential, mostly because the "substantial evidence" standard is not a very

rigorous one. In fact, the Supreme Court announced long ago that the standard can be met so long as there is "more than a mere scintilla" of evidence and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E).  A claimant is deemed to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot—considering his age, education, and work experience—engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

Reyes has made various challenges to the ALJ's determination that can generally be categorized into three areas: (1) the ALJ erred in evaluating Reyes' subjective symptoms; (2) the ALJ failed to sufficiently articulate the reasons for her RFC determination; and (3) the ALJ failed to sufficiently consider the effects of obesity and colitis in reaching her conclusions. I will consider each of these categories in turn.

## A.  The ALJ Properly Evaluated Reyes' Subjective Symptoms

Reyes argues that the ALJ did not properly take Reyes' subjective statements regarding the intensity and persistence of his symptoms into account when determining

his RFC. Notably, Reyes made many statements about the intensity, persistence, and limiting effects of his impairments, but the ALJ found that, while he had the impairments and symptoms of which he complained, his "statements about the intensity, persistence, and limiting effects of his symptoms… are inconsistent with the overall evidence of record." [DE 8, 17.]

This is a credibility finding by the ALJ. An ALJ's credibility finding is entitled to substantial deference and will only be overturned if it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). However, an ALJ must explain why they made their credibility determination by giving specific reasons supported by the record. *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). If the ALJ simply relies on boilerplate language and states generally that the claimant's subjective statements were inconsistent with the record, that is insufficient. *See, e.g., Bjornson v. Astrue,* 671 F.3d 640, 644–46 (7th Cir.2012); *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir.2010); *Punzio v. Astrue,* 630 F.3d 704, 709 (7th Cir. 2011). Plaintiff points out that the ALJ made a statement just like that, and that the ALJ was thus using "mere boilerplate language" that "is not sufficient to discount subjective symptoms." [DE 18, 2.]

I do not disagree that the ALJ has some language on the issue of credibility that is boilerplate. But it is not the inclusion of the boilerplate language that creates a reversible error, it is the failure to follow it up with any specific reasoning. *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his [credibility] conclusion adequately, the inclusion of [the template] language can be harmless.").

In this case, the ALJ did not *merely* use boilerplate language. She followed it up with a multi-page analysis of the record. [DE 8, 17-20.] She explained, amongst other things, that Reyes' shoulder injuries, while still causing pain and limitations, had improved some after his surgeries, that he was found to have a normal gait, was observed having no difficulty getting onto the examination table during a medical evaluation, could walk and stand for short periods, tested negative for neuropathy, had normal motor control over his hands, normal strength, and that his orthopedic doctor noted that he was at full weight bearing status. *Id.*

Reyes argues that the ALJ's opinion lacked any analysis of why she finds Reyes' reports of pain in his upper extremities to not be supported nor why she believes that, despite his reported weakness, he has enough strength to meet the minimum functional requirements under the law (able to lift 10 pounds bilaterally frequently and 20 pounds occasionally). [DE 14, 8.] However, the ALJ did explain this, and cited to portions of the record to back up her assertions. First, she explained that the RFC did account for limited shoulder mobility, and any associated pain was accounted for in the RFC's mental limits. [DE 8, 18-19.] She also explained that examinations revealed that he had no tenderness in the right shoulder, good scar healing from his shoulder surgeries, and that he was gaining better mobility through physical therapy. *Id.* She pointed out that his orthopedic doctor stated in 2023 that he was at full weightbearing status and cited to the doctor's report, which further stated that Reyes was cleared for normal activities with no restraints. *Id.* at 20, 943. While Reyes points out that she did not discuss every procedure relating to Reyes' shoulder in her analysis, she sufficiently elucidated her

7

reasoning on this point. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) ("[A]n ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence.") (internal marks omitted).

Second, with regard to his strength, she explained that he had a 5/5 grip strength for both hands as tested in 2023 and cited to the medical evaluation reporting that result. [DE 8, 18.] She also referenced his reported ability to get on and off the examining table without difficulty and normal fine finger movements. *Id.* A 5/5 grip strength test, fine motor control, and observed physical ability noted by the doctor (who additionally cleared him as having weightbearing status and being able to return to normal activities) is substantial evidence of his ability to lift and carry things within the range for light work.

Reyes cites to *Engstrand v. Colvin* to support his contention that his subjective statements cannot be discounted merely because they are not substantiated by medical evidence or confirmed by medical testing. 788 F.3d 655 (7th Cir. 2015). But this case is far from *Engstrand* where the claimant asserted that he had severe pain caused by neuropathy. The ALJ discounted this testimony because, according to the ALJ, he should have gotten an EMG or nerve conduction study to confirm it, despite no doctor ever recommending the claimant receive such testing. *Id.* at 660. The Court found that this was a patently wrong reason to discount the claimant's statements regarding his pain. *Id.* The ALJ in *Engstrand* made a variety of other odd credibility determinations related to the claimant's symptoms that the Court reversed, including that, "because Engstrand could feel the 10–gram monofilament, he must be lying about his

neuropathy" even though the record shows that the monofilament test is not designed to measure neuropathic pain at all. *Id.*

As I said, our case is not at all like *Engstrand*, where the ALJ inserted herself into the role of the doctor and determined what tests should have been done or what the results support. In this case, *the doctors* (and not the ALJ) assessed Reyes and determined that he had some shoulder mobility, that he had no tenderness in his right shoulder, good healing from the surgeries, improvements from physical therapy, that he had fine motor control and strength in both arms, and other relevant considerations. The ALJ took Reyes' symptoms into account and properly reflected that in Reyes' RFC, but determined that Reyes' subjective statements regarding the extent of his symptoms could not be squared with the record in a way sufficient to qualify him as disabled.

I don't doubt that Reyes has several impairments, and neither did the ALJ. *Id.* at 17. However, the ALJ determined that Reyes' statements regarding the persistence and intensity to which these impairments made him disabled were inconsistent with the record and would not carry the day. Given the ALJ's analysis and the record in this case, I cannot say that her credibility determination was patently wrong. Indeed, it was well supported.

## B. The ALJ Sufficiently Articulated the Reasons for Her RFC Determination

The RFC is an assessment of what work-related activities a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). Reyes argues that the ALJ did not sufficiently explain why she reached her RFC determination. To pass muster on review, the ALJ's RFC analysis "must say enough to

9

enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 948 F.3d 1227, 1233 (7th Cir. 2021).

Reyes claims that the ALJ failed to articulate a sufficient reason because she did not adopt any medical opinion from the record and rejected all of them as unpersuasive. [DE 18, 6.] Instead, according to Reyes, the ALJ impermissibly interpreted the medical evidence herself and decided to "play doctor." *Id.* at 6. Were this the case, it would, indeed, be grounds to find that the ALJ's RFC determination lacked adequate reasoning and support, which is a reversible error. *Suide v. Astrue*, 371 F. App'x. 684, 690 (7th Cir. 2010) (holding the ALJ "is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record."); *Shirley v. O'Malley*, 2024 WL 1341077, at *6 (N.D. Ind. Mar. 29, 2024) ("In fact, an ALJ creates reversible error when he engages in a series of speculative independent medical findings that are untethered to professional medical opinion or scrutiny.").

But that's not what happened here. Instead, the ALJ considered the medical opinions and, where she disagreed, she did so *in favor of Reyes*. In other words, the ALJ defined a more restrictive RFC, which of course works to the benefit of Reyes. That does not create a reversible error. Reyes' argument on this point appears to misunderstand the ALJ's opinion. To show that the ALJ failed to adopt any opinion, Reyes asserts that "Here, the ALJ did not find the state agency impairments to be persuasive" and then quoted the portion of the ALJ's opinion disagreeing with the state agency evaluation. [DE 18, 7.] However, the ALJ disagreed with the state agency evaluation because she

believed the RFC should be *more* restrictive, not less. For clarity, the relevant portion of the ALJ's opinion is included below:

> The State agency found no severe mental impairments and they limited the claimant to medium work with occasional left overhead reaching (Exhibits 2A; 4A). The undersigned agrees the mental impairment is nonsevere, but the limit to medium work is not persuasive. More severe restrictions are warranted based on subsequent surgical procedures, pain, and combination of physical impairments. Although the claimant has had normal fine finger manipulation, he has been in physical therapy trying to strengthen his shoulder. He is also obese with ankle edema showing on physical examination occasionally, which warrants the postural and hazard restrictions.

[DE 8, 20.] Under the state agency's evaluation, Reyes was capable of medium work, meaning he would be eligible to engage in even more work activities, and would be even further from being considered disabled. The ALJ's disagreement with the state agency was that she believed Reyes was only capable of light work. *Id.* at 16, 20.

This is not the only medical evaluation the ALJ disagreed with in favor of a finding to Reyes' benefit. Reyes' orthopedic doctor noted in 2023 that Reyes was at full weightbearing status and had "no restrictions" and should "return to normal activities." [DE 8, 943.] The ALJ found the orthopedic doctor "partially persuasive" as the doctor's examination showed "improvements in his shoulders, which is consistent with the physical examination findings and diagnostic imaging[.]" *Id.* at 20. However, despite the orthopedic doctor's finding that he should no longer have restraints, the ALJ still found it reasonable given his injuries and complaints to have some "reaching and manipulative limits" in Reyes' RFC. *Id.*

In sum, the ALJ did consider the medical opinions and evaluations in the record, and while Reyes is correct that the ALJ had some disagreements with them, those disagreements were in favor of giving Reyes a *more* restrictive RFC. It would be odd indeed to reverse an ALJ's determination that was to the benefit of the claimant. This is why the Seventh Circuit has held that a disagreement with a medical opinion in favor of the claimant is not a reversible error that the claimant can, or should want, to pursue. *Dudley v. Berryhill*, 773 Fed.Appx. 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error.") (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (finding it "illuminating and persuasive on its face" that no doctor found greater limitations than did the ALJ).

## C.  The ALJ Properly Considered Reyes' Obesity and Colitis

Reyes' final issue is with how the ALJ dealt with his obesity and colitis. While an ALJ need not discuss every piece of evidence in her opinion, she must still consider all relevant medical evidence and cannot cherry pick facts or ignore a whole line of evidence that supports a finding of disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Reyes asserts that the ALJ in this case ran afoul of this requirement in two ways related to Reyes' conditions: (1) by not including a discussion of how Reyes' obesity, when combined with his other impairments, factored into her determination and (2) by being "entirely devoid" of any discussion of Reyes' chronic diarrhea / colitis. [DE 14, 9-11; DE 18, 8-9.]

An ALJ must "specifically address the *effect* of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (emphasis added). Reyes asserts that, while his obesity was discussed in combination with some ankle edema, it was not discussed in connection with Reyes' other conditions.

The ALJ noted Reyes' obesity multiple times in her opinion, and more importantly, discussed her analysis of its *effects* repeatedly. She noted Reyes' ability to walk without assistance and with a normal gait as well as his ability to get on and off an examination table. She noted that while he had some edema in his ankles, it was minor, and that she accounted for it by including certain hazard restrictions in his RFC. While Reyes asserts that his obesity was not considered in combination with his coronary artery disease, the ALJ specifically noted how his cardiac physical examination showed normal heart rate and rhythm with no murmurs or bruits, and that the edema was due to the obesity and unrelated to any cardiac issue. [DE 8, 19.]

Reyes also pointed to his hip issues. But the ALJ considered this, too. The ALJ found that, even though the x-ray interpretations only evidenced mild degenerative changes and no acute findings, it qualified as a severe impairment, which she included RFC limitations to address. The ALJ did consider Reyes' obesity in combination with some of his other conditions that could be related. In fact, she specifically noted that Reyes' "combination of physical impairments" is one of the reasons she decided to have a more restrictive RFC than the state agency believed was warranted. [DE 8, 20.]

13

The ALJ did not specifically note how his obesity combined with every condition in the substantial record, but Reyes has not explained how these various other conditions would combine with obesity to change the ALJ's analysis. Reyes cites to *Villano v. Astrue*, which found that an ALJ failed to account for how obesity affected the claimant when considered in combination with arthritis in her knees. 556 F.3d 558 (7th Cir. 2009). The effects of obesity and arthritis in the knees could clearly have compounding limiting effects, as could obesity with severe spinal disc disease. *Gentle v. Barnhart*, 430 F.3d 865 (7th Cir. 2005). In this case, the ALJ explained the effects of various conditions on the status of Reyes' key functions related to those conditions. The analysis was sufficient on this point. *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) ("[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."); *see also Hammerslough v. Berryhill*, 758 Fed.Appx. 534 (7th Cir. 2019) ("The ALJ discussed the combination of Hammerslough's impairments… The ALJ could have said more, but what he said is sufficient[.]")

Reyes claims, "all that the ALJ writes is that Reyes is obese and this was accounted for in his RFC," and that the ALJ failed to address why, in light of his conditions, he was able to stand and walk enough to qualify for light work. [DE 14, 9]. As demonstrated above, the ALJ has brought forth substantial evidence supporting that, while considering his obesity in combination with his other impairments, Reyes is

able to walk and stand sufficiently to perform light work. I cannot find that she has failed her minimal articulation requirements on this point.

Reyes' assertion that the ALJ's opinion is entirely devoid of any analysis of the related issues of Reyes' colitis and diarrhea is overstated. The ALJ noted that Reyes had colitis, that he had no specialized treatment for it, and that it was not a recurring issue. Indeed, the record supports that dietary changes resulted in "marked improvements" in Reyes' colitis and diarrhea symptoms and, all in all, he only had "a couple of colitis flare up[s] with diarrhea." [DE 8, 529, 1010.] I agree that the ALJ's analysis of this particular condition was brief, but of the over a dozen conditions claimed in this case, the record revealed this to be one of the more minor and clearly non-severe. I cannot say the ALJ made a reversible error by having such a short analysis on the issue of Reyes' colitis and diarrhea.

## CONCLUSION

The ALJ applied the correct legal standards, built a logical bridge from the evidence to her conclusion, and her analysis of Reyes subjective statements regarding his symptoms is not patently wrong. Accordingly, the decision of the ALJ is AFFIRMED.

SO ORDERED.

ENTERED: March 25, 2026.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE

15